Final matter on today's argument calendar, case number 23-6203, United States v. Oladimeji. Good afternoon, Mr. Phillips. Good afternoon, and may it please the court, my name is Daniel Perez. I represent the defendant and appellant Samuel Oladimeji, pursuant to the Criminal Justice Act, and I want to begin by expressing our gratitude to the court for accepting our application for an expedited appeal. For the court's information, Mr. Oladimeji's projected release date, according to the Bureau of Prisons website, is February of 2025, so nine months from now. The sentence imposed by the district court was substantively unreasonable for three reasons in combination, and I want to briefly mention the first two and move to the third, which I suspect the court will have the most questions about. First of all, this was a garden variety fraud case. It was very simple and straightforward. It was unsophisticated. The guidelines calculations were very simple. It was a base offense level of seven. You add 14 for the loss amount, and you end up at 21. There were no victim-related adjustments. There was no role enhancement. Second, the government repeatedly, and perhaps unsurprisingly, suggested to the district court that a below-guideline sentence would be appropriate in this case, and I say unsurprisingly because we cited in our brief authority, based on sentencing guidelines data, or excuse me, sentencing commission data, saying that in fraud cases, district courts routinely vary below the guidelines in approximately 50% of the cases or more, and when they do so, they do so in a meaningful way, 40% or 50% below. The median fraud sentence imposed by district courts nationally, as well as in the Southern District of New York, as well as in this court, is somewhere around 20, 22 months, and so then the question becomes why, in this case, this very simple case, this very unspecial case, when it comes to fraud cases, in which the loss amount really was not very high, when we look at fraud cases in this courthouse, in this district, of a loss amount of, an actual loss amount of $400,000. Why was the defendant sentenced to 32 months when the guidelines were 37 to 43? And that brings me to the third consideration, which really has two parts. First, is that the district court really did appear to be somewhat unfamiliar with the personal history of the defendant. The district court made a comment about, he's an alien living here on a green card, and leaving the alien part aside for a moment. The next comment was, I don't know if the green card is still open. Well, the PSR answered that question. The comment by the district court was, he's an alien living here on a green card. I don't know if it remains open. If it remains open. In other words, if it's still valid or if it has been expired. And the PSR. The green card. The green card, yes. I'm sorry if I misspoke. And the PSR specifically said he's living here legally, lawfully, the green card is still valid. And it said that in two different places in the PSR. The district court made reference to his first wife in Nigeria and his second wife in the United States. Well, no. His first partner, Bintan Tasolo in Nigeria, the mother of his three children in Nigeria, the PSR specifically said that they were not married. They had an on and off relationship. They had a good relationship. And his wife was actually Tanya Tucker, who he married after he immigrated to the United States. And so you have these pockets of the record that the district court appeared to be unfamiliar with. And then you pair that and the fact that this sentence was a stone's throw from the guidelines with some of the comments made by the district court, such as he is an alien. Well, if he's living here on a green card, by definition he is not a U.S. citizen. So that's surplusage. The comment about no prior convictions that we know of. And I have read hundreds of sentencing transcripts. And when a defense lawyer stands in court and says he has no prior convictions and the PSR is clear that he has zero criminal history points, the response from district judges tends not to be not that we know of. And the comment at the end of the sentencing about the Nigerian lady was uncomfortable to read, uncomfortable to write into a brief, and uncomfortable to articulate in this courtroom. And so, yes, Your Honor. Counsel, as far as you know, have we ever found a below guideline sentence to be substantively unreasonable? My answer to Your Honor's question is no. However, I will add... Or as you just said, not that you know of. Not that I know of, but there's a lot that I don't know, Judge Newman. I did point this out in our brief. Saying that below guidelines sentences are rarely found to be unreasonable says to me that there are circumstances under which a below guidelines sentence can be unreasonable. And so if you look at CABA, which I guess is the closest case to this, or Leung, those are the two cases cited by the government in their brief, which I also discussed at some length in the reply brief. There was open and patent and obvious references to the defendant's nationality and appeals to the defendant to go back to his or her home country and say, look, if you come to the United States and you commit crimes and you get caught, you're going to be hammered. So don't do that. That was then. That was in the late... Is that a substantive reasonableness? I mean, that's a technical question, maybe, but is that... What bucket, what category of challenge is that? I framed it as a substantive reasonableness argument, Judge Loyer, because it is not just that comment. It's not just that aspect of this case. It is that aspect of this case, the comments by the district court regarding the defendant's immigration status and nationality, in combination with the fact that this is a simple, straightforward fraud case, in combination with the fact that the guidelines were almost, this was almost a within guidelines sentence, which generally doesn't happen in fraud cases. The issue, and I appreciate and understand the arguments that you've very well made, but how are we, or how am I, to assess whether he, the factors and the language that Judge Hellerstein used here didn't inure to your client's benefit? In other words, not the way that he was looking at it, one could view as actually inuring to your client's benefit and were you saying, I want to vary downward based on those factors? I, candidly, I don't understand Your Honor's question. He got, this was almost a guideline sentence. Well, but it was below guidelines. By five months, yes. I'm following up on Judge Newman's question. The arguments that you're making, I think you're suggesting that because of misreadings of the record, maybe an inappropriate view in your view of, or consideration of certain factors by Judge Hellerstein, he, that did not inure to your client's benefit, in fact, that hurt your client in sentencing. That is our position, yes, Your Honor. How can I detect that? You can detect that by virtue of the data that we've given the court, saying that in fraud sentences, the average sentence is slightly above 20 months. In the Southern District. In the Southern District and nationally. If in this case, the sentence is 20 months, 18 months, 24 months, then I have a very different argument. Maybe I don't have an argument at all. How about Judge Hellerstein's sentencing in fraud cases? I do not, I did not. Wouldn't that be more relevant? It would be, and if there had been an objection below, that would have been helpful. Certainly it would have expanded the record and we would be able to look into that, but I'm not sure that that necessarily answers the inquiry either. Because you could have a judge who historically sentences well below the guidelines, or well above the guidelines, and that doesn't necessarily inform a determination of whether that sentence was... I was standing at this exact podium, many, many years ago, in front of that man to my left, Judge Cabranes, in United States v. Fernandez. And Fernandez, and there have been subsequent cases since then, but that is a sort of foundational decision, suggests that in the vast, vast, vast, mind-blowing cases, a guideline sentence, and certainly a lower than guideline sentence, is going to be substantively reasonable. Whether or not we've done it since then is a separate question, but it seems to me that when you're in the substantive reasonableness territory, Fernandez and its progeny make it very difficult for you to bail. So maybe I'm missing, you're making certain other arguments that dovetail into arguably improper considerations. That I appreciate. I am. I am. And I concede everything Your Honor just said. I agree. I don't take issue with a word Your Honor just said. But we don't have to prove that there was actual bias in this case. What we have to show, and this is what CABA instructs, we don't have to prove actual bias, just the appearance of unfairness. And so I'm not trying to, nor am I looking into the mind of the district judge. I'm looking at a case in which the defense lawyer came in and said, give him time served, a non-custodial sentence. He's going to be deported anyway. And as people in my line of work know, especially in these shorter sentences, the actual punishment is the removal from the United States. That's the one that lasts. And the bar from returning to the United States. I'm looking at a case in which the government said, not once or twice, just in their papers, but seven times in their papers, and again, a couple of times at sentencing, a below guidelines sentence is appropriate. And I'm looking at a case in which the average sentence nationally for fraud is about 20 months. This guideline was 37 to 43. And the district court comes in at 32. And so maybe it is the kind of situation where we're both looking at the same thing and we're just, we're just, it's almost a false, and we're deriving different interpretations of the same record. But I look at this case and I say, why is it that he was so close to the guidelines? If he, and I will say this too, it is, and perhaps this is my own importation and observation. He's from Nigeria. And there's a, I'd say more than that, but we are all familiar that there is unconscious bias. And I'm not implying that there was here, but it does exist. Thank you. You reserve some time for rebuttal. Thank you. We'll hear from you. Good afternoon, Your Honor. Good afternoon. May it please the court. Camille Fletcher, I represent the United States in this appeal. I represented the United States in the court below. This court should affirm the judgment, except for a limited remand for the purpose of amending the restitution amount in the written judgment in order of restitution to conform with the restitution amount announced at sentencing. The defendant's 32-month below guideline sentence was substantively reasonable and was justified under the Section 3553A factors, including to reflect the seriousness of the offense, promote respect for the law, to provide deterrence, and to mete out the appropriate punishment. As the court well knows, in the overwhelming majority of cases, a guideline sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances. This court has held in U.S. v. Caveira that it will set aside a district court's substantive determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions. Nothing about this... So, would you just focus on language used? That might be most helpful. Yes, Your Honor. So, the defendant argues that the district court's reference to the defendant's nationality and immigration status improperly contributed to the sentence imposed. That is flat out not supported by the record, and it does not justify reversing the sentence. It's well established that the reference to national origin and naturalized status is permissible during sentence, but only so long as it does not become the basis for determining the sentence. And that's in U.S. v. Cava, the court held that. So, that's the question? No, that is the question, Your Honor. So, at the court first, the district court first referenced the defendant's national origin at the start of the sentencing proceedings. During the portion where the district court discussed the relevant facts of the case and asked both defense counsel and the government whether the court had appropriately recited the relevant facts, including the defendant's national origin. That was entirely appropriate for the court to do that. In that same portion of the proceeding, the district court used the term alien to refer to the defendant. The defendant, the term alien is how immigrants are referred to in immigration status, in immigration statutes on the book. So, it is entirely appropriate for the court to refer to the defendant as an alien, because he in fact is an immigrant, and that is how immigrants are referred to in immigration status. Some of the other comments, including comments about the defendant's family makeup, again, was in that beginning portion. Other portions of the district court's comments about whether the defendant's wife was in America, or whether the defendant's wife was in fact in Nigeria, actually were made after the sentence was imposed. And it was a part of the district court's discussion with defense counsel about what family visitation would be appropriate while the defendant was incarcerated. So, there's nothing in the record to support that the defendant's immigration status was in fact the basis for determining the sentence. And in fact... Is it fair to say that before the sentence was imposed, the district court thought the defendant had committed bigamy? No, Your Honor. I don't think it would be fair to say that. The district court, when it initially recited the facts, including some of the background of the defendant's personal circumstances, it was accurate, and that was at the start of the proceedings. And the parties, both defense counsel and government, agreed that the district court had appropriately recited the relevant facts in the case. Really? In fact, did he have two wives? The PSR did not. According to the PSR, he never married the mother of his children in Nigeria. He had only... I'm asking about the judge. Did the judge refer to a wife in Nigeria and a wife here? At some point in the proceeding, but that was corrected, and the defendant himself pointed to his wife in the courtroom. But again, that was after the sentence was already imposed. There's nothing in the record that necessarily supports that the district court was implying that there was bigamy at play. Because he did adopt the factual recitation in the PSR, which made clear that the defendant was co-parenting with the mother of his children in Nigeria and was in fact married to the woman and had a child with his wife living in the United States. You're saying the court did not refer to a wife in Nigeria? There was, I believe, there was a reference, but that was after the sentence was imposed and it was corrected on the spot. Before the sentence was imposed, there was no reference to a judge to a wife? I don't believe so, Your Honor. Okay, thank you. And to make one more point, Your Honor, when imposing the sentence, the only reference to national origin was after the court imposed a term, the 32-month term of imprisonment, Judge Hellerstein asked the government why he should impose a term of supervised release since it was likely that the defendant would be deported. So to the question that Your Honor asked defense counsel earlier, it does appear that the defendant's national origin actually inured to the defendant's benefit because Judge Hellerstein was contemplating not even imposing a term of supervised release. May I ask you a question? Because you seem to be, in your argument, drawing a line between what's said by the district court judge in sentencing prior to the official imposition of sentence and thereafter. Is that the government's position that we can't consider in assessing the propriety or impropriety of a sentence what a district court judge says after officially imposing a sentence? Because I've seen a lot of sentencing where district court judges have said some interesting things after sentence. No, that's not the government's position. So of course we can look at the full record. That's correct, Your Honor. We determine that after whatever the page is where Judge Hellerstein imposed the sentence, he made some statements that seem to have been in his mind, so to speak, so he said we can get into anyone's mind in connection with sentencing. We can consider that. So why can't we consider everything that follows? The court can consider the entirety of the record, Your Honor, but I would point the court to the 3553A factors that the court imposed, and that's on page 836 and 837 of the record where the district court specifically went through the specific 3553A factors that it was considering. And it considered the seriousness of the crime, sophistication of the crime, the need to punish the defendant for violating societal norms, the loss to the elderly victim, the need to deter the defendant and others, the defendant's role in the scheme, as well as the defendant's personal circumstances and lack of criminal history. And to point out, while the government is not conceding that this was a run-of-the-mill fraud, the scheme was relative, was fairly sophisticated. They got a new email account and they spent months communicating with an investment advisor. Was he given a sophisticated means enhancement? He was not. He was not, but if you look at the facts of the case, Your Honor, for the scheme to work, it took many, many months and many emails communicating with this investment advisor, conning them into believing that they were in fact... Did the government seek a sophisticated means enhancement? We did not, Your Honor. Thank you very much. Just so the record is clear, in response to Judge Newman's question earlier, the district judge at page 841 makes what were, I guess, intended to be flattering statements. I hope you've learned your lesson. You're a talented person. There's no reason you can't make a living wherever you are. I hope you do that and find love and happiness in your family and work out some arrangements between your two families, how life could be good for you and for them. So he was conscious of the two families. Your Honor, yes, because there was discussion in both at the sentencing proceeding as well as in the PSR about the fact that the defendant was supporting his minor children in Nigeria. He was paying for their private school tuition as well as supporting them monthly. Having two families doesn't necessarily equate to bigamy, per se, because he was providing financial support to his children in Nigeria. There was no dispute about that in the record. Counsel, do you have information about the average sentence in the Southern District for frauds in the approximate amount of $400,000? I do not have that information at the ready, Your Honor. Okay, thank you. But the government submits that it should affirm, the sentence here was substantively reasonable, but for the limited remand to correct the restitution amount, the judgment should be affirmed. Thank you, Your Honor. Thank you, Your Honor. I think this is yours. I have just two brief comments. The first is at page 828 of our appendix, which is page 3 of the sentencing transcript. So the first certainly five minutes of the sentence. He's an alien living here on a green card. I don't know if it remains open. He has a previous wife and three children living in Nigeria. He has a second wife who's a U.S. citizen living here. So that was discussed prior to the imposition of sentence. I guess they would say previous. Well, Judge, I've been married once. I've had relationships prior to my marriage, but no one refers to a first marriage or a second marriage. If the PSR was clear, it was an on or off relationship. So in any event, I'm just trying to make sure the record is clear. Secondly, and I was very careful in the brief. At least I tried to be. We did not argue, as the government just said, that Mr. Olatomeji's immigration status or nationality improperly contributed to the sentence imposed. We did not argue in the brief that we did not make that argument. Instead, we urged that the district's court's comments at sentencing raise an objectively fair question whether his immigration status and nationality contributed to the sentence imposed. I just wanted to clarify that. Thank you. Unless the court has any further questions, I'll submit.